RECEIVED
IN MONROE, LA
APR 17 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| CEDRIC VASHON HUBBARD | CIVIL ACTION NO. 04-2095 |
| VERSUS | JUDGE ROBERT G. JAMES |
| LOUISIANA MACHINERY COMPANY, LLC. | MAG. JUDGE JAMES D. KIRK |

## RULING

This is an employment discrimination action brought by Plaintiff Cedric Vashon Hubbard ("Hubbard") against his former employer, Louisiana Machinery Company, LLC. ("LMC"). Hubbard alleges that he was subjected to race harassment and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*("Title VII").

On January 17, 2006, LMC filed a Motion for Summary Judgment [Doc. No. 12] seeking dismissal of all Hubbard's claims. On February 1, 2006, Hubbard filed a Memorandum in Opposition to the Motion for Summary Judgment [Doc. No. 17]. On February 9, 2006, LMC filed a Reply in Support of its Motion for Summary Judgment [Doc. No. 25].

For the following reasons, LMC's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

## I. FACTS AND PROCEDURAL HISTORY

Hubbard is an African-American male. He was employed at LMC from October 12, 2001, until he was terminated on November 21, 2002. LMC sells, leases, and services Caterpillar equipment in Louisiana. Initially, Hubbard worked as a temporary employee through a hiring agency to clean the area surrounding the warehouse. However, he was eventually hired by LMC

as a warehouseman in its used parts department. Hubbard's duties included putting parts in stock, pulling and arranging parts for shipment, notifying shippers to pick up parts, loading and unloading trucks, and cleaning the warehouse and surrounding area.

Hubbard's supervisor was the used parts manager, Claude Hicks ("Hicks"). When Hicks was not in the warehouse, Kevin Hogard, senior counterman, was Hubbard's supervisor. In addition, Andy Love ("Love"), counterman apprentice B, helped train Hubbard.[1]

When Hubbard was a temporary employee, he had very little contact with Love. However, when LMC hired Hubbard as a full-time employee and placed him in the warehouse, problems began to arise between the two.

One of Hubbard's duties was to locate parts in the warehouse and prepare them for shipment. However, at times, locating parts was difficult because inventory was misplaced. At times, Hubbard was unable to locate parts that Love requested. Love would become angry with Hubbard, and the two had a couple of arguments concerning the missing parts.

Hubbard and Love also had an argument about cleaning the warehouse. While employees were cleaning the warehouse to prepare for a visit from LMC's upper management, Love instructed Hubbard to help him and the other employees clean, even though Hubbard had already clocked out. According to Hubbard, Love told him to bring his "tail" back into the warehouse or else Love would "fuck" him up. [Doc. No. 12, Exh. A, p. 71].

In addition, Hubbard and Love had arguments concerning the use of the company telephone. Occasionally during work, Hubbard used the company telephone to make personal

---

[1] While Love was not an immediate supervisor of Hubbard, he was senior to Hubbard, and Hubbard performed tasks for him.

2

phone calls to check on the health of his daughter. Love reported to Hicks that Hubbard had been using the phone for personal calls, and Hicks removed the phone from Hubbard's desk. After Hubbard complained to Hicks about the removal of the phone, it was returned to him. The phone was removed a second time because of Hubbard's personal phone calls, but Hubbard did not complain to Hicks again.

Hubbard asserts that Love also harassed him. According to Hubbard, Love placed tacks on Hubbard's chair, placed catfish bait in his desk drawer, put water in the cushion of his seat, and greased the telephone. Love also asked Hubbard on one occasion whether he ever spoke to white women. When Hubbard responded that he had, Love responded that if he was the girl's father he would kill him. On another occasion Love gave three pictures to Hubbard that he found offensive.[2]

Hubbard complained to Hicks about Love's behavior.[3] While Hubbard never specifically told Hicks that he felt Love was discriminating against him or harassing him because of his race, he did tell Hicks that he was having a "hard time" with Love. [Doc. No. 12, Exh. A, p.69]. Hicks was aware that Love and Hubbard "picked on each other a lot," and Hicks met individually with Love and with Love and Hubbard together to resolve the problems. [Doc. No. 12, Exh. B, ¶ 9].

While Hubbard worked in the warehouse, he helped train Josh Toney ("Toney") and Jose

---

[2]One picture depicts a female using a vulgar gesture. Another picture depicts a female in lingerie. The last picture reads: "Help Wanted, Small black man for mud flap, Must be flexible and willing to travel." [Doc. No. 12, Exh. C].

[3]Hubbard never told Hicks about the three pictures Love gave him until after he was terminated at LMC. However, this does not substantively change the Court's analysis.

Salas ("Salas").[4] Although Hubbard was told that Toney and Salas would help him in the warehouse, they were both promoted to the front office while Hubbard remained in the warehouse. Hubbard inquired about the office position, but Hicks determined that Toney and Salas were better suited for the office positions because of their computer skills and job performance. Hubbard complained to Hicks about Toney's and Salas's promotion over him on two occasions. In response, Hicks gave Hubbard a fifty-cent per hour raise each time he complained.

At some point before Hubbard's termination, LMC claims that Hubbard told Hicks that his daughter was in the hospital in Bossier City, Louisiana. Hicks gave Hubbard permission to miss work to visit his daughter. Subsequently, Hicks had a telephone conversation with Hubbard's estranged wife who informed him that she and Hubbard's daughter were living in Atlanta, Georgia. Based on this information, Hicks terminated Hubbard on November 21, 2002, for lying. However, Hubbard denies this conversation ever occurred.

On January 17, 2006, LMC filed a Motion for Summary Judgment seeking dismissal of all Hubbard's claims. On February 1, 2006, Hubbard filed a Memorandum in Opposition to the Motion for Summary Judgment. On February 9, 2006, LMC filed a Reply in Support of its Motion for Summary Judgment.

With full briefing by all parties completed, the Court is now prepared to rule on the Motion for Summary Judgment.

---

[4]Toney is Caucasian, and Salas is Latino.

## II. Law and Analysis

### A. Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## B. Race Harassment

A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment. In order to establish a *prima facie* case or racial harassment alleging hostile work environment Hubbard must prove: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment he complained of was based on race; (4) the harassment complained of affected a term, condition or privilege of employment; and (5) LMC knew or should have known of the harassment in question and failed to take prompt remedial action. *See Celestine v. Petroleous de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). However, if the harassment is "allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs only to satisfy the first four elements." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

In order for harassment to affect a term, condition or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986). To determine whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citing *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)). The above inquiries serve to ensure that Title VII does not become "a general civility code." *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998).

LMC stipulates that Hubbard can satisfy the first and second prongs of his *prima facie* case. Hubbard is African-American, and he was subjected to unwelcome harassment. However, LMC argues that Hubbard cannot satisfy the third or fourth prongs of his *prima facie* case.

LMC argues that the alleged harassment was not so severe or pervasive as to effect a term or condition of Hubbard's employment. According to Hubbard, Love engaged in the following incidents of racial harassment:

(1) told Hubbard that if he had a daughter and Hubbard spoke to her, he would kill Hubbard;

(2) placed tacks on Hubbard's chair;

(3) placed catfish bait in Hubbard's desk;

(4) soaked Hubbard's chair with water;

(5) placed grease on ear piece of Hubbard's telephone;

(6) told Hubbard that he would "fuck" him up if he did not help clean the warehouse; and

(7) gave Hubbard three inappropriate pictures that depict a female in lingerie, a female making an obscene gesture, and a picture that read "Help Wanted, Small black man for mud flap, Must be flexible and willing to travel."[5]

The Court finds that Hubbard has not presented sufficient evidence to create a genuine issue of fact that the alleged harassment was so severe or pervasive as to affect a term or a condition of Hubbard's employment.[6] *See Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002) (Comment made by supervisor that "I'm just about to get that nigger" was insufficient to

---

[5]Hubbard also claims that someone wrote on his desk "Cedric is a monkey." However, Hubbard does not know who wrote the statement.

[6]The Court notes that Hubbard has not presented any evidence in his Memorandum in Opposition to support his claim of race harassment.

7

establish harassment); *Fortenberry v. Texas*, 75 Fed. Appx. 924, 928 (5th Cir. 2003) (Plaintiff's complaint of two racial slurs, stares, and a comment by a supervisor that an African-American female wearing a blonde wig looked like a "dishwater blonde" were not so severe or pervasive); *Burrell v. Crown Cent. Petroleum, Inc.*, 121 F. Supp. 2d 1076, 1078-79 (E.D. Tex. 2000) (Four comments, including comparing plaintiff to Whoopi Goldberg, calling plaintiff "Aunt Jemima," calling an obese black woman a "big cow," and the use of the word "honkie," combined with one prank, was insufficient to demonstrate a severe or pervasive work environment); *Dotson v. Gulf* No. Civ. A. H-05-0106, 2006 WL 44071, at * 12-14 (S.D. Tex. Jan. 9, 2006) (Using the term "nigger" on two occasions was not found to be sufficiently severe or pervasive); *see also Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5th Cir. 1982); *Hughes v. City of Shreveport*, No. Civ. A. 04-0500, 2005 WL 1704896 (W.D. La. July 19, 2005); *Hernandez v. Department of Treasury*, No. Civ. A. 02-3164, 2003 WL 22715648 (E.D. La. Nov. 13, 2003).

While Love's conduct was childish and offensive, the complained of conduct was not so severe or pervasive as to affect a term or condition of Hubbard's employment. Accordingly, the Court finds that LMC's Motion for Summary Judgment on Hubbard's claim of race harassment is GRANTED, and it is DISMISSED WITH PREJUDICE.

### C. Race Discrimination

Title VII prohibits an employer from terminating any person because of his race. *See* 42 U.S.C. § 2000e-2. To establish a claim of race discrimination under Title VII in the absence of direct evidence, the plaintiff may rely on the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Hubbard must first establish a prima facie case by showing that (1) he is a member of a protected class, (2) he was

qualified for his position, (3) he was subjected to an adverse employment action, and (4) he was replaced by someone outside his protected class. *See Shackelford v. Deloitte & Touche*, 190 F.3d 398, 404 (5th Cir. 1999).

> Once a plaintiff's prima facie burden is met,
>
>> the defendant then must articulate a legitimate, non-discriminatory reason for its [adverse employment decision]; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative).'" *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp.2d 854, 865 (M.D.N.C.2003).

*Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

For purposes of this summary judgment, LMC stipulates that Hubbard can satisfy his *prima facie* case of race discrimination. Because the Court will treat Hubbard as having satisfied his *prima facie* case for purposes of this summary judgment, the burden of production now shifts to LMC to produce evidence of a legitimate non-discriminatory reason for terminating Hubbard.

LMC argues that it terminated Hubbard for a legitimate non-discriminatory reason. LMC claims it terminated Hubbard because Hubbard told Hicks that his daughter was in the hospital in Bossier City, Louisiana. Hicks gave Hubbard permission to miss work to visit his daughter. Subsequently, Hicks claims that he had a telephone conversation with Hubbard's estranged wife who informed him that she and Hubbard's daughter were living in Atlanta, Georgia. Based on this information, Hicks decided to terminate Hubbard because he lied.

The Court finds that LMC has met its burden of production. Because LMC has proffered a legitimate non-discriminatory reason for the challenged employment action, the burden shifts

back to Hubbard to demonstrate the proffered rationale is merely pretext for discrimination. Hubbard must present substantial evidence in order to withstand a motion for summary judgment. *See Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

Hubbard argues that LMC's stated reason for termination is false because there is no way that Hicks could have known who Hubbard's estranged wife was, where she lived, or how to contact her. To support his theory, Hubbard states in his affidavit, under oath, that he was surprised to hear about his daughter ever being hospitalized. In addition, Hubbard also states that he is not aware of his daughter ever receiving medical treatment outside of the Monroe-West Monroe, Louisiana area, and he has not told anyone at LMC about her medical treatments. To further support his theory, Hubbard also states in his affidavit that while he was employed with LMC he was never accused of failing to work as scheduled.

The Court finds that Hubbard has presented a genuine issue of material fact as to whether LMC's reasons for termination are pretext for discrimination. In these circumstances, it is perfectly reasonable for a fact finder to reach different conclusions regarding the veracity of evidence presented by Hubbard and LMC. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("a plaintiff's prima face case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); *see also Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) (citing *Reeves*, 530 U.S. at 147, "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.").

Therefore, the Court finds the evidence of pretext, combined with Hubbard's *prima facie* evidence, in its totality, is sufficient to support a finding that summary judgment is unwarranted

at this time. LMC's Motion for Summary Judgment on Hubbard's claim of race discrimination is DENIED.

## III. CONCLUSION

For the foregoing reasons, LMC's Motion for Summary Judgment [Doc. No. 12] is GRANTED IN PART AND DENIED IN PART. LMC's Motion for Summary Judgment on Hubbard's claim of race harassment is GRANTED, and it is DISMISSED WITH PREJUDICE. LMC's Motion for Summary Judgment on Hubbard's claim of race discrimination is DENIED.

MONROE, LOUISIANA, this 17 day of April, 2006.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE